# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**PETER BERNEGGER,**  PLAINTIFFS

V.  NO. 1:08CV077-D-D

**BURT HANEY, et al.,**  DEFENDANTS

## MEMORANDUM OPINION

This matter was filed on April 14, 2008, by the Plaintiff, Peter Bernegger, who is proceeding *pro se*. Presently pending before the court are Plaintiff's two motions for a temporary restraining order and Defendants' motion to dismiss.

### A. *Factual Background*

The Plaintiff has named as Defendants two individuals along with the State Auditor's Office (or "the Department of Audit") and the State Land, Water and Timber Board ("LWTB"). Plaintiff asserts that he was awarded a quarter of a million dollar grant by the LWTB in 2004. Plaintiff complains that on the afternoon of June 14, 2006, "several armed agents, officers [and] employees of the Mississippi State Auditor's Office came into" his place of business located in West Point, Mississippi. Despite allegedly being threatened, Plaintiff refused to sign a form consenting to a search of the business and asked that the officials leave. A search warrant was subsequently obtained and the officials seized an unspecified number of computers which were returned to the Plaintiff seven weeks later. Officials also seized Plaintiff's personal and business records some of which, but not all, were reportedly returned months later.

Plaintiff contends that the search was nothing more than a "fishing expedition" based on false and misleading information given to the State Auditor's Office by Defendant Robbie Smith. As a result of the raid, Plaintiff claims he has suffered embarrassment and humiliation, emotional distress, and disruption of business relationships. The complaint enumerates at least ten separate claims all

arising out of the search of his business and seizure of property. Plaintiff is seeking compensatory and punitive damages.

Along with his complaint, Plaintiff filed a motion for preliminary injunction in which he sought to prevent "any agent representative, vendor or such thereof, of the State of Mississippi from" conducting their investigation. In his motion, Plaintiff states that he was being investigated for "failure to provide 55 jobs under a grant agreement." Plaintiff filed a second motion for preliminary injunction including the same allegations and requests. Defendants responded, arguing that the motions are meritless and that abstention is required.

Defendants simultaneously filed a motion to dismiss. Defendants' motion provides greater factual detail and sheds light on the nature of the relationship between the parties. Defendants offer that We Gel, a company apparently owned and operated by the Plaintiff, received a $250,000 grant from LWTB to purchase certain equipment for the business. The grant was secured by a first lien on the newly purchased equipment. In May 2006, LWTB requested We Gel provide a final report. The Plaintiff filed a report explaining, *inter alia*, that the Technical Director had defrauded the company. The State Department of Audit initiated a criminal investigation of We Gel. The investigation revealed that some of the equipment securing the grant had been sold. As a result, the State foreclosed on the remaining equipment. With regard to the Plaintiff's motions, the Defendants conclude that the State Agencies are immune from suit and the individual State actors are entitled to qualified immunity. Defendants further assert that Plaintiff's state law claims should be dismissed for his failure to comply with the Mississippi Tort Claims Act.

### B. Preliminary Injunction

It is well settled that a party must prove four elements to be entitled to preliminary injunctive relief: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury to the movant outweighs any harm that may result from the injunction to the non-movant; and (4) that the injunction will not disserve the public interest. *DSC Communications Corp. v. DGI Technologies, Inc.*, 81 F.3d 597, 600 (5th

Cir. 1996); *Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 1058, 134 L.Ed.2d 202 (1996); *Cherokee Pump & Equipment, Inc. v. Aurora Pump*, 38 F.3d 246, 249 (5th Cir. 1994); *Doe v. Duncanville Independent School District*, 994 F.2d 160, 163 (5th Cir. 1993); *Plains Cotton Co-op Association v. Goodpasture Computer Serv., Inc.*, 807 F.2d 1256, 1259 (5th Cir.), *cert. denied*, 484 U.S. 821, 108 S.Ct. 80, 98 L.Ed.2d 42 (1987); *Canal Authority of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974). This court pays more than lip service to the axiom that a preliminary injunction is an extraordinary remedy. *Cherokee Pump*, 38 F.3d at 249. It is "not to be granted routinely, but only when the movant, by a clear showing, carries [the] burden of persuasion." *Black Fire Fighters Association v. City of Dallas*, 905 F.2d 63, 65 (5th Cir. 1990) (quoting *Holland American Insurance Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985)); *Cherokee Pump*, 38 F.3d at 249 (quoting *Miss. Power & Light v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985)) ("The decision to grant a preliminary injunction is to be treated as the exception rather than the rule").

Given the bare-boned nature of Plaintiff's motions, it is difficult to analyze his claim within the structured elements necessary to obtain a restraining order. Nevertheless, Plaintiff's assertions are woefully insufficient for the court to seriously entertain granting such extraordinary relief. Plaintiff has not demonstrated any likelihood of success as to any of his claims. Taken in a light most favorable to him, the second and third elements may slightly weigh in Plaintiff's favor. The fourth element, however, weighs heavily against granting any injunctive relief–that the injunction will not disserve the interest. It is inconceivable how preventing the State from protecting a $250,000 investment would serve the public interest. Accordingly, Plaintiff's motions for temporary restraining order will be denied.[1]

---

[1] Plaintiff's motions will also be denied for additional reasons discussed in greater detail *infra*.

3

### C. Motion to Dismiss

When considering a motion to dismiss for failure to state a claim under 12(b)(6), the court must accept all well-pleaded facts as true and view the facts in the light most favorable to the plaintiff. *See, Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *Am. Waste & Pollution Control Co. v. Browning-Ferris, Inc.*, 949 F.2d 1384, 1386 (5th Cir. 1991). In order to survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead, "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. V. Twombly*, __ U.S. __, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965; *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 n.10 (5th Cir. 2007) (noting the 12(b)(6) standard has been modified by *Bell*). In deciding whether dismissal is warranted, the court will not accept conclusory allegations in the complaint as true. *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

<u>11th Amendment Immunity</u>

The United States Constitution provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of Another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment has consistently been interpreted as barring suits in federal court by citizens of a state against their own state or a state agency or department. *Edelman v. Jordan*, 415 U.S. 651, 662-63, 94 S.Ct. 1347, 1355-56, 39 L.Ed.2d 662 (1974). Although Plaintiff does not name the State of Mississippi as a party, the suit may nevertheless be barred if the state is the real party in interest. *Delahoussaye v. City of New Iberia*, 937 F.2d 144, 146 (5th Cir. 1991) (citing *Edelman*). The Defendant Departments argue that they are an arm of the State and as such, any monetary relief awarded would necessarily come from the State treasury.

To determine if the state is the real party in interest, the court must "examine the particular entity in question and its powers and characteristics as created by state law to determine whether the

4

suit is in reality a suit against the state itself." *Laje v. R.E. Thomason General Hosp.*, 665 F.2d 724, 727 (5th Cir. 1982). The Fifth Circuit has set forth six factors to guide the court's analysis;

>(1) whether the state statutes and case law characterize the agency as an arm of the state;
>
>(2) the source of funds for the entity;
>
>(3) the degree of local autonomy the entity enjoys;
>
>(4) whether the entity is concerned primarily with local, as opposed to statewide, problems;
>
>(5) whether the entity has authority to sue and be sued in its own name; and
>
>(6) whether the entity has the right to hold and use property.

*Minton v. St. Bernard Parish Sch. Bd.*, 803 F.2d 129, 131 (5th Cir. 1986) (internal citations omitted).

Here, the Defendant Departments are the State Auditor's Office and the Land, Water and Timber Board. Both of these State agencies were created by legislative acts. *See* Miss. Code Ann. §§ 7-7-201, 69-46-3. The Department of Audit was created by statute and is established under the supervision of the State Auditor. Miss. Code Ann. § 7-7-201. The State Auditor is authorized to appoint a director for the Department of Audit. Miss. Code Ann. § 7-7-203. Certain costs incurred by the Auditor's Office are paid out of a fund overseen by the State Treasury. Miss. Code Ann. § 7-7-213. The LWTB is funded by the State and the funds are deposited in the State Treasury. Miss. Code Ann. § 69-46-7. The LWTB's primary purpose is to assist the "Mississippi agricultural industry in the development, marketing and distribution of agricultural products." Miss. Code Ann. § 69-46-3.

It is apparent that both the State Auditors Office or the Department of Audit and the LWTB are departments of the State. Each agency is primarily, if not entirely, funded by the State. It is above dispute, that both agencies are concerned with statewide issues. Indeed, it has been recognized that suits against a state auditor are suits against the state. *See North Carolina v. Temple*, 134 U.S. 22, 10 S.Ct. 509, 33 L.Ed. 849 (1890); *Louisiana v. New York Guaranty & Indemnity Co.*, 134 U.S. 230, 10 S.Ct. 511, 33 L.Ed. 891 (1890). Thus, suits against the State Auditor's Office or Department of Audit are actually suits against the State of Mississippi.

No court has yet determined whether LWTB is an arm of the state. Based on the functions, funding and organization of the LWTB, the Defendants argue LWTB is an arm of the state entitled to immunity. The Plaintiff has not presented any argument to the contrary. Applying the *Minton* factors, however, the court finds that LWTB is an arm of the state. Accordingly, absent waiver or a valid abrogation of the State's immunity by Congress, the present civil matter is barred by the Eleventh Amendment.

A state's Eleventh Amendment and sovereign immunities are waived through their ratification of the Fourteenth Amendment. *Peel v. Florida Dept. of Transportation*, 600 F.2d 1070, 1078 (5th Cir. 1979). The Supreme Court, however, has ruled that it will infer such a waiver or congressional abrogation of immunities only where Congress has made it unmistakably clear that it purposefully intends to make the states amenable to private damages actions under the particular statute in question. *Edelman*, 415 U.S. at 672-73. Nevertheless, the Supreme Court has "flatly stated that neither the statutory language nor legislative history of Section 1983 evinces a sufficient, express congressional intention to override the traditional immunities of the states to allow private damages actions against states and their officials pursuant to that statute." *Familias Unidas v. Briscoe*, 619 F.2d 391, 405 (5th Cir. 1980) (citing *Quern v. Jordan*, 440 U.S. 332, 339, 99 S.Ct. 1139, 1144-47, 59 L.Ed.2d 358 (1979)). As a result, the State Auditor's Office or the Department of Audit and the LWTB are immune from suit.[2] Since the Plaintiff is proceeding as a pauper, the court is required to dismiss the claims against the immune Defendants. 28 U.S.C. § 1915(e); *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 1833, 104 L.Ed.2d 338 (1989).

Individual Immunity

The parties are at odds over the capacity in which the individually named Defendants, Burt Haney and Robbie Smith, are sued. Defendants argue they have been sued as officials of the state

---

[2] Alternatively, the court finds that the State Defendants are not "persons" within the meaning of 42 U.S.C. § 1983 and, thus, are immune from suit. *See Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989).

while the Plaintiff suggests that these two Defendants have been sued in their individual capacities. The complaint is silent on this point. The law in this Circuit requires the court to examine the allegations in the complaint to determine the nature of the plaintiff's cause of action. *Parker v. Graves*, 479 F.3d 335, 336 (5th Cir. 1973) (an action under Section 1983 does not lie against a private person in his individual capacity). The court is to review the substance of the claims, the relief sought, and the course of the proceedings to determine in which capacity the defendant is sued. *Adrian v. Regents of Univ. of Ca.*, 363 F.3d 398, 402-03 (5th Cir. 2000).

Plaintiff has sued all Defendants for various alleged violations of his constitutional rights but fails to ever adequately connect the loose facts to a specific right. Rather, Plaintiff makes use of legal "terms of art" and cites constitutional amendments preferring form over substance. For relief, Plaintiff is seeking both equitable relief and monetary damages. Suits for monetary damages are often characterized as suits against an individual since such relief is not available for official capacity claims. *See Shabazz v. Coughlin*, 852 F.2d 697, 700 (2d Cir. 1988); *Pride v. Does*, 997 F.2d 712, 715 (10th Cir. 1993). In response to the motion to dismiss, Plaintiff insists that he is suing the Defendants in their individual capacity. Plaintiff's complaint, however, refers to the Defendants "[a]s trained or certified or oath taking agents, employees of the state." Pl.'s Compl. p.14 ¶65. Notwithstanding the conflicting language, the court will treat the claims against individual Defendants as such. As an alternative basis for dismissal, the Defendants contend they are entitled to qualified immunity.

Government officials performing discretionary functions are protected from civil liability under the doctrine of qualified immunity if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *McClendon v. City of Columbia*, 305 F.3d 314, 322 (5th Cir. 2002). Federal courts apply a two-step analysis to claims of qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). First, "taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Scott v. Harris*, __ U.S. __,

127 S.Ct. 1769, 1774, 167 L.Ed.2d 686 (2007). If the answer is yes, the court then inquires whether the officer's conduct was objectively reasonable in light of the law that was "clearly established" at the time of the alleged violation. *Goodson v. City of Corpus Christi*, 200 F.3d 730, 736 (5th Cir. 2000).

Plaintiff alleges that Defendant Haney lied supplied false and misleading information to a State Judge in order to obtain a search warrant. Plaintiff states after refusing to consent to the search of his business, Haney "ordered the Clay County Sheriff's deputy to hold Bern, not allowing him to leave or move about freely." Pl.'s Compl. p.5 ¶10 (April 14, 2008). Further, Haney then called a judge to obtain a search warrant. *Id.* at p.6 ¶14. Haney "lied under oath to the judge in obtaining the search warrant" because he did not disclose some information regarding Plaintiff's affiliation with other businesses. *Id.* at p.9 ¶¶36-37. The only reference to Defendant Smith is that he "reported false and misleading information to his office in Jackson triggering the baseless raid." *Id.* at p.11 ¶47. Neither of Plaintiff's motions for injunctive relief or his response to the motion to dismiss provide more specific allegations. Plaintiff never gives examples or any description of the "false and misleading information." Rather, the complaint contains only conclusory allegation against Defendants Haney and Simth.

As best the court can glean from the pleadings, the undisputed facts are that Plaintiff received a grant or loan from the State. Admittedly, some malfeasance or fraud occurred within We Gel–the beneficiary of the State grant and the company owned and operated by Plaintiff. Pl'.s Response to Motion to Dismiss p.3. Following this and other revelations possible wrongdoing, the State initiated a criminal investigation of We Gel and Plaintiff.

Despite his obvious resentment of the investigation, Plaintiff never identifies a specific right that was violated. To the contrary, the facts even viewed most favorably to the Plaintiff, do not establish a violation of a constitutional right. *Irving v. Thigpen*, 732 F.2d 1215, 1216 (5th Cir. 1984) ( in the event there is no constitutional right the complaint fails) (citing 28 U.S.C. § 2254(a) (1982)). Therefore, the court need not go beyond the first inquiry of the qualified immunity analysis.

Nevertheless, the behavior of Defendants Haney and Smith as alleged by the Plaintiff does not go beyond the realm of objective reasonableness. Instead, the individual Defendants clearly were acting in accordance with, not contrary to, clearly established law. If, as Plaintiff alleges, he refused to consent to a search of the business, the Defendants properly and prudently sought and obtained a search warrant. The court, therefore, finds that the individual Defendants Haney and Smith are entitled to qualified immunity.[3]

State Law Claims

Plaintiff has attempted to establish several state law claims including tortuous interference, false imprisonment and intentional infliction of emotional distress. He is seeking monetary damages for each claim. Defendants argue that they are statutorily immune from suit and that Plaintiff failed to comply with the notice requirement of the Mississippi Tort Claims Act ("MTCA")

Governmental entities and employees are immune from liability when acting within the course and scope of their employment or duties. Miss. Code Ann. § 11-46-9. Law enforcement officers are not liable for detention of goods or merchandise unless the "detention is of a malicious or arbitrary and capricious nature." *Id*. Thus, in order to state a claim, a plaintiff must allege facts which if proven could be considered "malicious or arbitrary and capricious." *Harris v. Payne*, 254 No. 06-60885, Fed. Appx. 410, 422 (5th Cir. 2007) (incarceration of detainee for four months based on mistaken identity was mere negligence). Plaintiff has failed in this regard.

---

[3] Plaintiff makes several arguments concerning the validity of the search warrant because the "underlying facts and circumstances" were not attached to the warrant. Pl.'s Compl. pp.5-6 ¶¶20-25. To the extent Plaintiff is challenging the face of the search warrant, his claim is also unavailing. Technical errors or omissions contained in an affidavit or the warrant itself are insufficient to invalidate a search. *See Powell v. State*, 355 So.2d 1378, 1380 (Miss. 1978) (despite failing to sign the affidavit, warrant was not defective where judge swore applicant and heard oral testimony); *Meyer v. State*, 309 So.2d 161, 166 (Miss. 1975) (search warrant not void because of incomplete date on affidavit). Furthermore, it is the law in this state that oral testimony can be used to establish probable cause for the issuance of a search warrant. *Hester v. State*, 463 So.2d 1087, 1089 (Miss. 1985). Accordingly, Plaintiff's claims arising out of the search of his business do not state a claim.

As noted *supra*, Plaintiff has used only conclusory language in his complaint and motions. He never articulates any facts supporting his claims or facts which the court could liberally construe to state a claim. His complaint fairs no better with regard to the statutory immunity Defendants may enjoy under the State Tort Claims Act. Plaintiff assumes that he has plead enough to overcome the grant of immunity. That is, Plaintiff repeatedly states that Defendants have acted maliciously and arbitrarily but does not support his contention with any facts. *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005 )("we do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").

Further dispositive of the state law claims is the notice requirement under the Mississippi Tort Claims Act ("MTCA"). Miss. Code Ann. § 11-46-11(2). The MTCA requires that any person with a claim for injury against a governmental entity or its employee must give ninety days notice of the claim. *Id.* Notice of the claim must be in writing and delivered in person or by registered or certified mail. *Id.*; *Parker v. Harrison County Bd. of Sup'rs*, 987 So.2d 435, 440-41 (Miss. 2008) (verbal notice is not sufficient). Courts have interpreted the statute as demanding "strict compliance" with the notice requirement. *See Univ. Of Miss. Med. Center v. Easterling*, 928 So.2d 815, 819-20 (Miss. 2006); *Montgomery v. Mississippi*, 498 F. Supp. 2d 892, 905 (S.D. Miss. 2007). "The ninety-day notice requirement . . . is hard-edged, mandatory rule which the Court strictly enforces." *Easterling*, 928 So.2d at 820. The notice of a claim requirement is a "condition precedent to the right to maintain an action." *Gale v. Thomas*, 759 So.2d 1150, 1159 (Miss. 1999). The timely filing of the notice is a "jurisdictional prerequisite." *Id.*

In addition to the ninety-day notice, there are seven required categories of information which must be included in the written notice: (1) the circumstances which brought about the injury; (2) the extent of the injury; (3) the time and place the injury occurred; (4) the names of all persons known to be involved; (5) the amount of money damages sought; (6) the residence of the person making the claim at the time of the injury; and (7) the claimant's residence at the time of filing the notice. *South Cent. Reg. Med. Center v. Guffy*, 930 So.2d 1252, 1256 (Miss. 2006). A plaintiff must provide some

"substantial" information in each category. *Id.* at 1258. Failure to provide information for any of the seven statutorily required categories of information constitutes non-compliance. *Id.*

Plaintiff's notice fails to comply with the MTCA for several reasons. Plaintiff allegedly "faxed" letters on August 20, 2007, and July 10, 2008. The statute requires that the notice be served in person or via certified mail. Neither purported transmittal via facsimile will suffice. Second, the first letter dated August 20, 2007, fails to address all seven categories of information required by the statute. The letter, much like the complaint *sub judice*, fails to adequately describe the circumstances which brought about the injury. It is conclusory and presumptive in nature. The extent of his injury is also obscured by the Plaintiff's obvious aggravation over the search conducted at We Gel. Plaintiff's injury presumably arises out of events occurring on June 14, 2006. Plaintiff identifies Defendants Haney and Smith, as well as the State Defendants, among others. Plaintiff's letter never identifies an amount of damages that he intends to seek. Rather, the letter states he has suffered "great harm personally with damages financially, emotionally [sic] distress, loss of trust and there has been a deterioration in my health." There is no reference to the Plaintiff's residence in the letter. Accordingly, the facts as stated in the August 20, 2007, "intent to sue" letter are deficient; the letter was not served personally or via registered mail; the extent of his "injury" is not defined; the letter does not assign a dollar value to his purported injury; and there is no address for the Plaintiff. For all the foregoing reasons the August 20, 2007, letter did not substantially comply with the MTCA.

The July 10, 2008, "notice of intent to sue" is more thoughtfully prepared and even cites the MTCA statute. The fatal defect, however, is obvious. This civil suit was originally filed on April 14, 2008. The July 10, 2008, "notice" was alleged served via facsimile nearly three months after this suit was commenced and does not comport with the ninety-day notice required by § 11-46-11. Accordingly, the July 10, 2008, letter also does not substantially comply with the notice provision of the MTCA.

Pending Criminal Charges

During the pendency of this matter, the Plaintiff was indicted for fraud and conspiracy to defraud in relation to the same state grant or loan which forms the basis of this civil complaint. *See United States v. Peter Bernegger*, 1:07CR176-P-D. "[T]he normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." *Younger v. Harris*, 401 U.S. 37, 45, 91 S.Ct. 746, 751, 27 L.Ed.2d 669 (1971). The Supreme Court has long prohibited precisely the type of legal maneuvering Plaintiff is attempting to accomplish with this civil action–enjoining the impending criminal investigation and eventual prosecution. *See Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The *Young* doctrine and its progeny provide that,

> when absolutely necessary for protection of constitutional rights, courts of the United States have power to enjoin state officers from instituting criminal actions. But this may not be done, except under extraordinary circumstances, where the danger of irreparable loss is both great and immediate. Ordinarily, there should be no interference with such officers; primarily, they are charged with the duty of prosecuting offenders against the laws of the state, and must decide when and how this is to be done.

209 U.S. at 243-244.

Certain types of injury, such as the cost, anxiety, and inconvenience of having to defend against as single criminal prosecution, could not by themselves be considered "irreparable" in the special legal sense of the term. *Younger*, 401 U.S. at 46. Rather, "the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution." *Id.* "No citizen or member of the community is immune from prosecution, in good faith, for his alleged criminal acts. The imminence of such a prosecution even though alleged to be unauthorized and hence unlawful is not alone ground for relief in equity which exerts it extraordinary powers only to prevent irreparable injury to the plaintiff who seeks its aid." *Id.* (citations omitted).

Indeed, it would produce illogical and untoward results, if a criminal defendant or suspect were allowed to interfere with or halt criminal proceedings by preemptively filing a civil suit. Like

12

*Young* and the long line of cases to follow, there "does not appear from the record that [the Plaintiff has] been threatened with any injury other than that incidental to every criminal proceeding brought lawfully and in good faith." *Douglas v. City of Jeanette*, 319 U.S. 157, 164, 63 S.Ct. 877, 881, 87 L.Ed. 1324 (1943). There are no extraordinary circumstances present in this matter which would warrant enjoining the criminal proceedings. *Compare Dombrowski v. Pfsister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).[4]

### D. Conclusion

In accordance with the discussion *supra*, the State Defendants are entitled to 11th Amendment immunity as to Plaintiff's claims. The individual Defendants are entitled to qualified immunity. Plaintiff has failed to comply or substantially comply with the notice requirements of the MTCA and his state law claims shall be dismissed. Finally, for a variety of well established corner stone legal principles, the court declines to enjoin the criminal investigation of Plaintiff and resultant criminal prosecution. Thus, Plaintiff's motions for injunctive relief will be denied. Defendants' motion to dismiss will be granted.

A separate order in accordance with this opinion will be entered.

THIS the 18 day of September, 2008.

/s/ Glen H. Davidson
SENIOR JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI

---

[4] Dismissal of Plaintiff's claim regarding the validity of the search and seizure shall be without prejudice to his ability to seek redress pursuant to 42 U.S.C. § 1983 in the event that the criminal matter is resolved in his favor. *See Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).